# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Ruth Stone, | ) | |
| | ) | |
|     *Plaintiff*, | ) | |
| | ) | |
|     v. | ) | Case No: 13 C 04089 |
| | ) | |
| The Board of Trustees of Northern Illinois University, et al., | ) | |
| | ) | |
|     *Defendants*. | ) | Judge Frederick J. Kapala |

## ORDER

Defendants' motion to dismiss [38] is granted in part and denied in part. The official capacity claims are all dismissed. Counts I and II are dismissed against the individual defendants. Counts I and II are dismissed against NIU as to the hostile work environment claims. Count III is dismissed against defendants Hart, Cliffe, and Cunningham. Counts IV-VIII are dismissed entirely. Defendants Hart, Cliffe, and Cunningham are dismissed from the suit.

## STATEMENT

Plaintiff, Ruth Stone, has sued her current employer, the Board of Trustees of Northern Illinois University ("NIU"), and several of NIU's employees, Steven Willhelm, Tammie Pulak, Jeff Daurer, Sara Cliffe, Brian Hart, M. Eugene Massey, Steven Cunningham, and Bill Nicklas (collectively the "individual defendants"), alleging violations of 42 U.S.C. § 1983, Title VII, the Age Discrimination in Employment Act ("ADEA"), the whistleblower provisions of the Illinois State Officials and Employees Ethics Act ("Ethics Act"), the Illinois Whistleblower Act, and various Illinois tort law theories, all of which claim discrimination in her employment. In short, Stone was demoted, and not promoted, as part of her employment, which she alleges was a result of her age, gender, or protected activities. Currently pending before the court is defendants' motion to dismiss for failure to state a claim, which seeks dismissal of many, but not all, of Stone's theories. For the reasons which follow, that motion is granted in part and denied in part.

## I. BACKGROUND

In March 2009, Stone's pay was increased from that of a building services worker to that of a building services sub-foreman and she took on a number of responsibilities included in foreman work. However, her job title was never changed. In August 2011, her pay again increased from the sub-foreman level to the foreman level and she continued to do foreman-level responsibilities. However, again, her title was not changed. She was assured, though, by Nicklas, NIU's VP of institutional planning and sustainability; Hart, NIU's former superintendent of building services; and Wilhelm, a building services supervisor, that she would "soon" receive the official foreman title.

A year later, in August 2012, Stone complained to Nicklas, Wilhelm, and Pulak (another building services supervisor) concerning "mis-dealings" in the building services department revolving around several foremen who were allowing relatives to receive payment in excess of hours worked and about something to do with a sale of floor wax. In September 2012, Nicklas informed Stone that she would be taking a pay cut, which took effect in November 2012, and she never received the promised title increase to foreman. Stone complained to Nicklas, Pulak, and Massey (an HR coordinator at NIU) that she was never given an explanation for her reduction in pay. They did not provide an explanation, but instead advised her that she would either accept the reduction in pay or be demoted even further in both title and pay.

In January 2013, Stone filed a formal grievance to defendant Cliffe, NIU's compliance administration director, against Nicklas and Daurer (another, apparently uninvolved until this point, VP of over capital budget and planning) alleging that she had been demoted as a result of discrimination. Nicklas responded to the grievance, alleging that Stone had been "arbitrarily promoted" years earlier. Neither Nicklas nor Daurer mentioned that Stone had been threatened with further demotion if she had not accepted the pay cut.

Cliffe permitted Cunningham, a VP of business and finance and NIU's chief of operations, three extensions of time to respond to the grievance. It is unclear from the complaint what Cunningham had to do with the process, why he would need an extension, or how Cliffe had authority over the chief of operations to allow or disallow such an extension. Nevertheless, it appears he was involved in the final decision. Cliffe and Cunningham determined that Nicklas and Daurer complied with protocol in reducing Stone's pay.

In February 2013, Stone filed her EEOC complaint concerning her demotion. In March 2013, Stone was demoted again, back to building services worker,[1] and received another reduction in pay.

In March 2013, Stone filed a grievance to the human resources department alleging that Pulak treated male workers more favorably than her. Specifically, Pulak allegedly interacted with male members of the staff through "inappropriate touching" which Stone felt was intimidating. Stone never received a response to her grievance. Stone also complained to Nicklas, Massey, Wilhelm, and Daurer that Pulak was making her do work that male workers were not required to do, like cleaning toilets and bathroom floors. Stone alleges that each defendant "refused" to conduct an investigation into her complaints.

Also in March 2013, Stone applied for an available building services foreman position, and was interviewed by Pulak, Willhelm, and Daurer. In April 2013, Pulak advised her that she did not receive one of the available positions. Instead, two males under the age of forty were hired. Stone then contacted Daurer to complain about Pulak's inappropriate behavior and failure to promote her and was told to stop contacting him.

Based on the above, Stone sets out the following counts in her amended complaint: disparate

---

[1] The court notes that this allegation of being demoted back to building services worker clashes with the previous allegations that she had received pay and responsibility increases without ever having been promoted up from that title classification. However, the court need not attempt to reconcile this apparent contradiction, as it is not ultimately relevant to the court's analysis.

2

treatment and/or retaliation and/or hostile work environment based on her gender in violation of Title VII against all defendants (Count I); disparate treatment and/or retaliation and/or hostile work environment based on her age in violation of ADEA[2] against all defendants (Count II); disparate treatment and/or retaliation based on her gender and/or age in violation of the Equal Protection Clause pursuant to 42 U.S.C. § 1983 against all of the individual defendants (Count III); retaliation in violation of the Ethics Act against the individual defendants (Count IV); retaliation in violation of the Whistleblower Act against the individual defendants (Count V); conspiracy to violate her constitutional rights against all defendants pursuant to 42 U.S.C. § 1983 (Count VI); Illinois state law conspiracy against all defendants (Count VII); and Illinois common law intentional infliction of emotional distress against the individual defendants (Count VIII). All counts are brought against the individual defendants in their individual and official capacities. Defendants have moved to dismiss most, but not all, of the amended complaint, arguing: (1) the official capacity claims against all of the individual defendants in each of the counts must be dismissed as barred by sovereign immunity; (2) Counts I and II must be dismissed against the individual defendants because Title VII and the ADEA do not permit individual liability; (3) Count I must be dismissed against all defendants because it fails to state a claim under Title VII; (4) Count II must be dismissed against all defendants because it fails to state a claim under the ADEA; (5) sovereign immunity requires the dismissal of Counts III, IV, and V against NIU and Counts IV, V, and VIII against the individual defendants; (6) Counts III, IV, and V fail to state a claim against defendants Cliffe, Hart, and Cunningham; (7) Count VIII fails to state a claim under Illinois law for intentional infliction of emotional distress; and (8) Counts VI and VII fail to state a claim for conspiracy. Stone concedes the first argument, and thus the official capacity claims against the individual defendants in all of the counts are dismissed. The court will address each of the remaining arguments in turn.

## II. ANALYSIS

### A. Standards

When deciding a defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court accepts all of the well-pleaded allegations of the complaint as true and draws all reasonable inferences in favor of the plaintiff. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Killingsworth v. HSBC Bank Nev., N.A., 507 F.3d 614, 618 (7th Cir. 2007). To state a claim under the Federal Rules, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[D]etailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true . . . state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation marks omitted). In analyzing whether a complaint has met this standard, the "reviewing court [must]

---

[2]The amended complaint actually sets out that Count II is based on Title VII, rather than the ADEA, even going so far as to state that "Title VII prohibits employers from denying employees equal employment opportunities . . . based on their age . . . ." The court presumes this is a mistake, and that Count II is intended to be brought pursuant to the ADEA (which is listed earlier in the complaint as the basis for the age-related claims), as Title VII does not, by its explicit terms, protect against discrimination on account of age. See 42 U.S.C. § 2000e-2(a) ("It shall be an unlawful employment practice for an employer--(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . .").

3

draw on its judicial experience and common sense." Id. at 679.

## B. Individual Liability Under Title VII and the ADEA

Counts I and II are brought against both NIU as Stone's employer and against the individual defendants, presumably based on their supervisory capacity. Defendants argue that Title VII and the ADEA do not permit claims against individual supervisors, but are, instead, designed to be brought only against employers. In his response, Stone does not mention this argument. Nevertheless, it is well-established in the Seventh Circuit that neither Title VII nor the ADEA permit individual liability. See Worth v. Tyer, 276 F.3d 249, 262 (7th Cir. 2001) ("[S]upervisors are not liable in their individual capacities under Title VII."); Horwitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37, 260 F.3d 602, 610 n.2 (7th Cir. 2001) ("[T]here is no individual liability under the ADEA."); Cianci v. Pettibone Corp., 152 F.3d 723, 729 (7th Cir. 1998) ("[I]ndividual supervisors who are not otherwise employers cannot be sued under . . . the ADEA."); Williams v. Banning, 72 F.3d 552, 555 (7th Cir. 1995) ("[A] supervisor does not, in his individual capacity, fall within Title VII's definition of employer . . . ."). Thus, that portion of the motion is granted and Counts I and II are dismissed as against the individual defendants.

## C. Sufficiency of the Title VII Allegations

Defendants next argue that Count I of the amended complaint fails to adequately allege disparate treatment, hostile work environment, or retaliation on account of gender in violation of Title VII against NIU, Stone's employer.

To state a claim for disparate treatment based on gender, Stone must plausibly allege that "she was subjected to intentional discrimination based on . . . her gender." Chaib v. Indiana, 744 F.3d 974, 981 (7th Cir. 2014). Thus, Stone must set out factual allegations to show: (1) she is a member of a protected class, (2) she was subjected to an adverse employment act, and (3) there is a link between those two. See Martino v. W. & S. Fin. Grp., 715 F.3d 195, 201-02 (7th Cir. 2013). However, the Seventh Circuit has recently explained that the third of these need not be set out with plausible factual allegations, instead a plaintiff can rely on conclusory allegations that the first and second are linked. See Luevano v. Wal-Mart Stores, Inc., 722 F.3d 1014, 1028 (7th Cir. 2013); see also Carlson v. CSX Transp., Inc., ___ F.3d ___, No. 06-3436, 2014 WL 3361072 (7th Cir. July 10, 2014); Tamayo v. Blagojevich, 526 F.3d 1074, 1084 (7th Cir. 2008); E.E.O.C. v. Concerta Health Servs., Inc., 496 F.3d 773, 782 (7th Cir. 2007).

An adverse employment act is some act by the employer which causes a "qualitative change in the terms or conditions of [the employee's] conditions of employment or some sort of real harm." Chaib, 744 F.3d at 982 (quotation marks omitted). Here, Stone alleged that she is a woman, which is a protected class under Title VII, and that she was subject to the following acts which could plausibly qualify as adverse employment acts: the November 2012 pay cut, the March 2013 demotion and pay cut, and the March 2013 failure to promote her. She conclusorily links the first two adverse employment actions to her gender, which is enough. See Luevano, 722 F.3d at 1028. As to the third, she specifically alleges that Pulak was involved in the hiring decision, including being a member of the hiring committee. She also alleges that Pulak required Stone to perform work that males were not required to do and showed favoritism towards males on account of her inappropriate behavior with males in the workplace. These allegations are sufficient to plausibly infer the existence of

4

discriminatory animus from Pulak which may have been a motivating factor in the promotion decision, even if conclusory allegations were not sufficient. Thus, the motion is denied to the extent it seeks dismissal of the disparate treatment claim in Count I against NIU.

Similarly, "Title VII also forbids employers from retaliating against employees by taking adverse employment actions for complaining about prohibited discrimination." Chaib, 744 F.3d at 986. Thus, Stone must set out allegations to show: (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there is a link between those two. See Humphries v. CBOCS W., Inc., 474 F.3d 387, 404 (7th Cir. 2007). Again, however, the third need only be averred in a conclusory allegation. See Luevano, 722 F.3d at 1029. There are a number of protected activities mentioned in the complaint: the January 2013 formal grievance, the February 2013 EEOC complaint, the March 2013 grievance concerning Pulak's alleged inappropriate behavior with male staff members, and the April 2013 complaint to Daurer about Pulak's alleged inappropriate behavior. The first and last are linked to an adverse employment act by conclusory allegations, which are sufficient. See id. Moreover, the February 2013 EEOC complaint is immediately followed by the second demotion and pay cut and the March 2013 grievance concerning Pulak is immediately followed by the failure to promote, which had Pulak as part of the decision-making team. Although suspicious timing by itself is generally insufficient to survive summary judgment, it is sufficient to nudge a complaint from possible to plausible where the timing is close enough. See ACLU of Ill. v. City of Chi., No. 75 C 3295, 2011 WL 4498959, at *3 (N.D. Ill. Sept. 23, 2011). Thus, that link would be plausible even if conclusory allegations were not sufficient. Accordingly, the court finds that Stone has plausibly alleged a retaliation claim and the motion to dismiss is denied as to the retaliation claims in Count I against NIU.

Finally, "Title VII prohibits the creation of a hostile work environment." Chaib, 744 F.3d at 985 (quotation marks omitted). In order to state a claim for hostile work environment, Stone must set out factual allegations to plausibly show: "(1) the work environment must have been both subjectively and objectively offensive; (2) her gender . . . must have been the cause of the harassment; (3) the conduct must have been severe or pervasive; and (4) there must be a basis for employer liability." Id. Title VII is not a code of civility, instead it only makes harassment actionable when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Cerros v. Steel Techs., Inc., 288 F.3d 1040, 1045-46 (7th Cir. 2002) (alteration and quotation marks omitted). The only allegations concerning Stone's work environment are: (1) that Pulak allegedly required her to clean toilets while men were excused from the same duty and (2) Pulak's alleged inappropriate touching of male coworkers. Starting with the latter, Pulak's inappropriate and harassing behavior towards another protected class (males) does not create a work environment which is hostile towards Stone's gender (female). See Yuknis v. First Student, Inc., 481 F.3d 552, 554 (7th Cir. 2007). That leaves only the toilet-cleaning allegation, but that allegation is unaccompanied by any allegation of how often this occurred or how far toilet cleaning is outside her normal duties. Thus, there is no factual allegation which would plausibly suggest either the severity or pervasiveness of the identified harassment. Without that, the complaint does not plausibly state a claim for hostile work environment on account of gender. Accordingly, the motion to dismiss is granted as to the hostile work environment claim in Count I.

5

### D. Sufficiency of the ADEA allegations

Defendants also argue that Count II of the amended complaint fails to adequately allege disparate treatment, hostile work environment, or retaliation on account of age in violation of the ADEA against NIU.

The tests under the ADEA and Title VII are virtually identical at this stage, in this case merely requiring the court to substitute age for gender as the protected class but otherwise applying the same tests.³ See Andrews v. CBOCS W., Inc., 743 F.3d 230, 234 (7th Cir. 2014). Turning first to her disparate treatment claim, Stone alleges that she was fifty years old at the time she was passed over for promotion, and thus she is in the class protected by the ADEA. Again, Stone alleges she was subject to the following acts which could plausibly qualify as adverse employment acts: the November 2012 pay cut, the March 2013 demotion and pay cut, and the March 2013 failure to promote her. The first two are connected to her age by conclusory allegations, which is sufficient. For the third, Stone provides conclusory allegations and she alleges that the two individuals who were promoted in her place were males under the age of forty. Although the additional allegations about those hired in her stead, standing alone, likely still falls short of plausibility, see Kirley v. Bd. of Educ. of Maine Twp. High Sch. Dist. 207, No. 13 C 1706, 2013 WL 6730885, at *7 (N.D. Ill. Dec. 20, 2013), the conclusory allegations are enough without it in any event. Accordingly, the motion to dismiss is denied as to the disparate treatment claim in Count II against NIU.

The complaint also states a claim for ADEA retaliation, for the same reasons stated above under Title VII. She has conclusorily tied her specified protected activities to adverse employment actions, which is sufficient. Additionally, the February 2013 EEOC complaint was immediately followed by the March 2013 demotion and pay cut and the March 2013 grievance concerning Pulak was immediately followed by the failure to promote, which had Pulak as part of the decision-making team. Those allegations would be sufficient to state a plausible claim for retaliation, even if conclusory allegations were insufficient. See ACLU of Ill., 2011 WL 4498959, at *3.

However, the complaint fails to state a claim for hostile work environment based on age. The Seventh Circuit has presumed without deciding that the ADEA will support a hostile work environment claim. Fugate v. Dolgencorp, LLC, 555 F. App'x 600, 603 n.1 (7th Cir. 2014). However, the claim is not plausibly pled for two reasons. As set out supra concerning Title VII, the only allegations concerning Stone's work environment are that: (1) Pulak required her to clean toilets while men were excused from the same duty and (2) Pulak's alleged inappropriate touching of male coworkers. For the same reasons mentioned above, they fail to set out a hostile work environment. Additionally, even if they were enough to state a claim for gender-based hostile work environment, she does not allege that the male coworkers who were subjected to less rigorous or unpleasant terms of employment were younger than her or plausibly allege that the behavior was otherwise targeted towards her on account of her age (as opposed to her gender). Moreover, "[u]nlike Title VII, the

---

³The Seventh Circuit has not explicitly extended to the ADEA the reasoning in Luevano and the other cases cite supra which indicate that a Title VII claim's causation element can be sufficiently alleged by conclusion rather than plausible factual allegation. Nevertheless, given the fact that the ADEA and Title VII typically draw on the same test, see Atanus v. Perry, 520 F.3d 662, 672 (7th Cir. 2008), and the fact that there is no authority indicating that Luevano and the other cases do not apply in the ADEA context, this court will presume that the same rationale applies.

6

ADEA permits damages only in the form of lost wages (past or future), not compensatory damages for pain and suffering or emotional distress," id., and there are no allegations that the hostile work environment alleged here resulted in a loss in wages. Thus, even if the harassment were plausibly pled, it would be without remedy under the ADEA. For these reasons, the motion to dismiss is granted as to the ADEA hostile work environment claim.

### E. Sovereign Immunity

Defendants next make several arguments based on sovereign immunity, but functionally they break down into two groups: that Counts III, IV, and V should be dismissed against NIU on account of sovereign immunity and Counts IV, V, and VIII should be dismissed against the individual defendants on account of sovereign immunity. The first group is dealt with easily enough: Counts III, IV and V are explicitly only brought against the individual defendants, so whether or not sovereign immunity would block those claims as against NIU is moot. The second group is less straight forward, defendants argue that Counts IV, V, and VIII—the Ethics Act, the Whistleblower Act, and intentional infliction of emotional distress claims—are all barred by sovereign immunity because Illinois has not waived immunity as to those claims and the claims, although purportedly brought against the individual defendants, are actually brought against the state.

The Illinois State Lawsuit Immunity Act, 745 ILCS 5/1, provides generally (with a relevant exception discussed infra) that the State of Illinois is immune from suit in any court except the Illinois Court of Claims. See Richman v. Sheahan, 270 F.3d 430, 441 (7th Cir. 2001). "These state immunity rules apply to [Stone's] state law claims in federal court." Id. Here, however, Stone has sued individual officers rather than the state itself in Counts IV, V, and VIII. A "claim against individual officers will be considered against the state" if the individual officers were (1) acting within the scope of their authority, (2) performing a duty not owed by the public generally independent of state employment, and (3) engaged in matters ordinally within that employee's normal and official functions. Id.

In response, Stone only argues that the actions of the individual defendants were outside the scope of employment. However, as in Richman, demotion and promotion decisions are clearly within the scope of Stone's supervisors' employment,[4] and thus sovereign immunity blocks the claims in Counts V and VIII based on the Whistleblower Act and Illinois state tort law. See Kannaby v. U.S. Army Corps of Engineers, 53 F. App'x 776, 778 (7th Cir. 2002) ("Here, Kannaby contends that the defendants' conduct was outside the scope of employment because they lied to him about the dangerousness of the work, misapplied regulations, improperly suspended him, and forced him to work without proper training and equipment. We disagree that these allegations, if true, show that the defendants were acting outside the scope of employment. Assigning employees to work assignments and reprimanding them for refusing are undoubtedly conduct for which his superiors were authorized, and the conduct took place within authorized employment time and place.").

---

[4] In her very brief response to this argument, Stone mentions that Pulak's alleged inappropriate touching of Stone's male coworkers could be considered outside the scope of her employment. Assuming that is the case without the need to address it, there are no plausible allegations which connect Pulak's inappropriate touching of male employees as retaliation for Stone's alleged whistleblowing activities. Thus, Stone's argument that Pulak engaged in inappropriate touching of others to punish Stone is not sufficient to save Count V from dismissal.

7

The Ethics Act claim in Count IV, however, is not so neatly resolved. Although Stone does not argue this fact, the Illinois State Lawsuit Immunity Act states that claims brought pursuant to the Ethics Act may be brought by that act's terms, see 745 ILCS 5/1, and the Ethics Act expressly permits claims against the state to be brought in circuit courts, which are courts of general jurisdiction, see 5 ILCS 430/15-25. See also Block v. Office of Ill. Sec'y of State, 2013 IL App (5th) 120157, ¶15 ("The State of Illinois has waived immunity with respect to claims brought under section 15-25 of the Ethics Act, and those claims are properly brought in the circuit courts of this State."); id. at ¶9 ("Sovereign immunity, as it exists in the State of Illinois, exists only by virtue of, and to the extent granted by, statute. The Illinois Constitution of 1970 abolished sovereign immunity, '[e]xcept as the General Assembly may provide by law.' Ill. Const. 1970, art. XIII, § 4."). Nevertheless, the Ethics Act claims are also barred by the Eleventh Amendment because the waiver of sovereign immunity does not evince a clear indication of waiver of the Eleventh Amendment right to be free of suit in federal court, instead the Ethics Act only provides that suit is appropriate in Illinois circuit courts. See Block v. Ill. Sec'y of State, No. 09-117-DRH, 2010 WL 706043, at *3 (N.D. Ill. Feb. 24, 2010) ("The State Officials and Employees Ethics Act provides only that '[t]he circuit courts of this State shall have jurisdiction to hear cases brought under this Article.' 745 ILCS 430/15-25 (2009). Plaintiff points to this provision to support his position that Illinois has expressly waived its sovereign immunity. However, while Illinois might have consented to suit in its own Courts, nothing in the statute states that it has consented to suit in federal courts."); see also Osteen v. Henley, 13 F.3d 221, 224 (7th Cir. 1993) ("In effect [plaintiff] is arguing that a state cannot waive its sovereign immunity in part; if the state doesn't want to be sued in federal court, it can't establish a court of claims to hear suits against it. But since a state can waive its sovereign immunity to suit in its own courts without thereby being deemed to have waived its Eleventh Amendment immunity to suit in federal court, we cannot see why a state cannot confine damages suits against itself to a particular state court." (citations omitted)). Thus, Count IV must also be dismissed on immunity grounds.

Accordingly, the motion to dismiss Counts IV, V, and VIII is granted and those claims are dismissed in their entirety.[5]

### F. Defendants Cliffe, Hart, and Cunningham

Defendants next argue that the allegations in Counts III, IV, and V fail to state a claim against specific individual defendants, namely Cliffe, Hart, and Cunningham. Because Counts IV and V have already been dismissed supra on the basis of sovereign immunity, only the allegations as they relate to Count III need to be considered. In Count III, Stone alleges disparate treatment and retaliation on the basis of her gender and/or age in violation of the Equal Protection Clause pursuant to § 1983. Disparate impact and retaliation claims based on a violation of the Equal Protection Clause in the employment context pursuant to § 1983 are identical to Title VII and ADEA claims in all relevant aspects, see Lavalais v. Vill. of Melrose Park, 734 F.3d 629, 635 (7th Cir. 2013), except that (1) Title VII and ADEA claims are brought against an employer while § 1983 claims must be brought against an individual government officer and, more importantly, (2) conclusory

---

[5]Because this is sufficient to adjudicate Counts IV, V, and VIII, the court need not consider defendants' alternative argument that Counts IV, V, and VIII fail to state a claim against particular or all of the defendants.

8

allegations of the causative link are not sufficient, instead plaintiff must offer "facts that might plausibly support" the discriminatory intent link.[6] Sung Park v. Ind. Univ. Sch. of Dentistry, 692 F.3d 828, 832-33 (7th Cir. 2012).

The only allegation against Hart is that in 2011, after Stone's second pay-increase-without-title-promotion, he informed her that she would "soon" receive the official foreman title, which she thereafter did not receive. Since this is before any of her protected activities which could make the basis of a retaliation claim, and because Hart is not alleged to have participated in the case in any way thereafter, it is clear she has failed to set out a retaliation claim against Hart. There are not even conclusory allegations linking Hart to any of the adverse employment acts (identified supra). Additionally, the fact that Hart informed her that she would "soon" receive an official promotion on top of her pay increase does not function as a plausible link between any of the adverse employment actions and Stone's gender or age. In short, then, it is inadequate to set out a plausible claim for gender- or age-based disparate treatment or retaliation. The motion to dismiss Count III against Hart is granted.

Turning to the allegations against Cliffe and Cunningham, they overlap a great deal. Cliffe allegedly received Stone's January 2013 grievance concerning Nicklas' and Daurer's alleged discrimination, permitted Cunningham three extensions of time to answer, and then ruled adversely to Stone. Cunningham apparently had some duty to respond to the grievance and was in some way allegedly involved in the final decision. Stone conclusorily alleges that the three extensions of time and the failure to provide an explanation for the final decision on the grievance were based on her age and/or gender, but those are not adverse employment actions and conclusory allegations are insufficient under § 1983. See Sung Park, 692 F.3d at 832-33. The adverse decision on the grievance, which is at least arguably closer to an adverse employment act, is not linked in any way, conclusorily or otherwise, to animosity based on Stone's gender, age, or previous protected activities. Even accepting that the complaint sets out sufficient allegations that Nicklas and Daurer engaged in discrimination, that does not mean Cunningham and Cliffe did so. See Matthews v. City of E. St. Louis, 675 F.3d 703, 708 (7th Cir. 2012) (requiring personal involvement in deprivation to be liable under § 1983). Accordingly, the motion to dismiss Count III against Cliffe and Cunningham is granted.

### G. Conspiracy

Defendants next argue that Counts VI and VII fail to state a claim for conspiracy. Both of Stone's theories of conspiracy, § 1983 and state conspiracy, require a plausible allegation that more than one defendant agreed to engage in tortious behavior of various flavors. See Redd v. Nolan, 663 F.3d 287, 292 (7th Cir. 2011); Milliman v. McHenry Cnty., No. 11 C 50361, 2012 WL 5200092, at *3 (N.D. Ill. Oct. 22, 2012). Defendants argue, however, that Counts VI and VII should be

---

0. The court recognizes there may be some tension between the holding in Sung Park that conclusory allegations of discriminatory intent are insufficient in § 1983 employment discrimination claims and the holding in Luevano and the other cases cited supra that conclusory allegations of discriminatory intent are sufficient in Title VII employment discrimination claims. The court will apply the law as it is currently written.

dismissed on account of the intra-corporate conspiracy doctrine, which holds that "a conspiracy cannot exist solely between the members of the same entity." Payton v. Rush-Presbyterian-St. Luke's Med. Cntr., 184 F.3d 623, 632 (7th Cir. 1999). The doctrine also applies to Illinois tort law conspiracies. See United States ex rel. McGinnis v. OSF Healthcare Sys., No. 11-cv-1392, 2014 WL 2960344, at *10 (C.D. Ill. July 1, 2014). There are exceptions to the doctrine available in "egregious circumstances." Payton, 184 F.3d at 632 (quotation marks omitted). The two exceptions are (1) "where corporate employees are shown to have been motivated solely by personal bias," and (2) where "the conspiracy was part of some broader discriminatory pattern . . . , or . . . permeated the ranks of the organization's employees." Hartman v. Bd. of Trs. of Cmty. Coll. Dist. No. 508, 4 F.3d 465, 470-71 (7th Cir. 1993). Plaintiff admits that the defendants are all a part of the same entity, but briefly argues that she meets both exceptions.

As to the first, the Seventh Circuit is clear that the exception applies only where it is plausible that the individuals acted solely from personal bias. See id. at 470. The example given by the Court includes the Ku Klux Klan incorporating to avoid conspiracy liability for "carrying out acts of violence." Travis v. Gary Cmty. Mental Health Cntr., Inc., 921 F.2d 108, 110 (7th Cir. 1990). There is no suggestion of anything resembling that level of egregiousness in Stone's complaint, nor is there a plausible suggestion that defendants were only motivated by selfishishness (rather than the business of running NIU). Accordingly, that exception will not save her conspiracy claims.

As to the second, the allegations in the complaint include a handful of officers (in the context of a very large public university) who made three demotion/failure-to-promote decisions which allegedly adversely affected plaintiff, and only plaintiff. That is far from either a broad discriminatory pattern or a plausible allegation that discriminatory behavior had permeated the ranks of the organization's employees. See Travis, 921 F.2d at 111 (noting that multiple acts by a relatively small group of corporate actors would not overcome the intra-corporate conspiracy doctrine). Thus, the second exception will not save her conspiracy claim from dismissal, either, based on the intra-corporate conspiracy doctrine. Consequently, the motion to dismiss Counts VI and VII is granted.

### III. CONCLUSION

The motion to dismiss is granted in part and denied in part. The official capacity claims are all dismissed. Counts I and II are dismissed in their entirety against the individual defendants. Counts I and II are dismissed against NIU as to the hostile work environment claim. Count III is dismissed against defendants Hart, Cliffe, and Cunningham. Counts IV-VIII are dismissed entirely. Defendants Hart, Cliffe, and Cunningham are dismissed from the suit.

Date: 8/5/2014        ENTER:

_____
FREDERICK J. KAPALA

District Judge